## LAKE DRUMMOND CANAL & WATER CO. v. JOHN L. ROPER LUMBER CO. et al.

### MARSHALL TOWING CO., Inc., v. SAME.

(Circuit Court of Appeals, Fourth Circuit. April 19, 1918.)

### Nos. 1576, 1577.

1. ADMIRALTY ⊕⇒118—REVIEW—FINDINGS OF LOWER COURT.
   Where the lower court finds the facts, and there is sufficient legal evi- dence to sustain its findings, its conclusion is entitled to great weight, and should not be reversed, unless manifestly contrary to the evidence.

2. CANALS ⊕⇒29—DUTY TO KEEP OPEN LOCK GATES.
   In conducting locks 40 feet wide for the passage of a barge 30 feet wide, it was the duty of a canal company to keep the gates fully opened, thrown back into the recesses provided for them, thus leaving the sides of the locks perfectly even, and failure to do so was negligence.

3. TOWAGE ⊕⇒11(8)—DANGEROUS CHARACTER OF LOCKS—KNOWLEDGE OF TUG CAPTAIN.
   A tug captain, approaching the gates of a canal company's locks, should have known that any obstruction or snag sticking out upon the sides of the locks would necessarily result in injury to towed vessels going through such a narrow passage, only about 40 feet in width, to accommodate their 30 feet of breadth, and should have stopped when he saw the opened canal gate was jutting out of its recess, so as to obstruct passage.

4. TOWAGE ⊕⇒15(1)—LIBEL FOR INJURY TO BARGE—FINDINGS.
   On libel against canal company and towing company for injury to barge, towed through canal company's locks by towing company's tug, court's finding that both towing company and canal company were at fault im- plied finding that persons in charge of tug were invited to enter locks when gates were not completely opened, a dangerous condition, which both they and the canal company could have seen.

Appeals from the District Court of the United States for the East- ern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Libel by the John L. Roper Lumber Company against the Marshall Towing Company, Incorporated, wherein the libelee filed petition al- leging fault for the accident against the Lake Drummond Canal & Water Company, which denied liability. From a decree awarding libelant costs and damages, and dividing the damages equally between

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the Marshall Towing Company, Incorporated, and the Lake Drummond Canal & Water Company, the latter appeal.    Affirmed.

Braden Vandeventer, of Norfolk, Va. (Hughes & Vandeventer, of Norfolk, Va., on the brief), for Lake Drummond Canal & Water Co.

James G. Martin, of Norfolk, Va., for John L. Roper Lumber Co.

H. H. Little, of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for Marshall Towing Co., Inc.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge.    The above-entitled appeals are substantially one case.    These appeals are from a decree entered in the District Court of the United States for the Eastern District of Virginia, in which the libelant was awarded the sum of $1,766.94 with interest, as costs and damages sustained by it on account of an injury to a barge under charter to it and while in its possession.    The injury to the lighter or barge was caused while it was being towed into one of the locks of the canal of the Lake Drummond Canal & Water Company, in consequence of a collision or contract of the forward port side of the barge with the abutment wall of the canal at the entrance of one of its locks.    The court below held both the Marshall Towing Company, Incorporated, and the Lake Drummond Canal & Water Company at fault, and divided the damages equally between the Marshall Towing Company, Incorporated, owner of the tug, and the Lake Drummond Canal & Water Company, owner of the canal, both of whom appealed.

The original libel was filed by the John L. Roper Lumber Company, charterers and bailee of the barge or lighter, against the Marshall Towing Company, Incorporated, as owner of the tug, for the damage which the former proved was sustained by the barge, and which it, the John L. Roper Lumber Company, was forced to pay to the owners of the barge, the Colonna Marine Railway Company.    To this libel the Marshall Towing Company, Incorporated, filed its answer, and also filed a petition under the fifty-ninth admiralty rule, alleging the fault for the accident against the Lake Drummond Canal & Water Company.    To both libel and petition the Lake Drummond Canal & Water Company filed its answer denying liability.

No contention is made by either appellants that the John L. Roper Lumber Company was not entitled to recover, the sole question involved herein being whether the Marshall Towing Company is liable for half damages, or whether the Canal Company should have been held solely liable—the Towing Company contending that the collision and the resulting damages was solely due to the fault and negligence of the Canal Company in failing to have and keep its premises in good order and condition, so that its locks would open properly for the entrance and exit of vessels, and for the negligence of its officers, servants, and agents in inviting the tug and her tow to enter the locks at a time when the gates thereof were not properly open for entrance; further, that the Lake Drummond Canal & Water Company was solely

at fault in failing to give warning to the petitioner's tug of the condition of the lock in time to enable it to stop and thus avoid her tow coming in contact with the gate. The Lake Drummond Canal & Water Company insisted that the court below erred in holding "that because the gate of the canal lock was out of alignment a few inches that this was negligence on the part of this respondent, and that it was partially the approximate cause of the injury, or that it in any way proximately contributed to the injury"; also that the court erred in holding that the tug was not solely at fault in entering the lock at the time it did. There are other contentions on the part of the respondents, but these, we think, are sufficient to raise the pertinent issues involved in this controversy.

[1] The court below, after considering all the testimony, as we have stated, held both appellants were liable. It is the universal rule that where the lower court finds the facts, and there is sufficient legal evidence to sustain its findings, its conclusion is entitled to great weight, and should not be reversed, unless it is manifestly contrary to the evidence.

[2, 3] It appears from the evidence that the tug, acting for and on behalf of the Towing Company, was engaged in towing the barge through the locks of the Canal Company, and that the locks afforded a space of 40 feet through which vessels could pass when the gates were wide open, and that the gates were so constructed that, when properly opened, they fitted into the sides of the locks in sockets prepared for that purpose, so that the sides of the locks would be smooth, and so constructed that passing vessels touching the sides would pass along the same without sustaining an injury. It also appears from the evidence that the barge was 30 feet wide, plus "three chafing strakes on each side, 30 feet over all." Those in charge of the Canal Company's locks must have known, or with ordinary care could have known, that any snag sticking out from the sides of the locks would necessarily result in injury to vessels going through a narrow passage of this character. While this is true as to the agents of the Canal Company, the tug captain should have known this also. In conducting these locks it was the duty of the Canal Company to keep the gates fully opened—that is, the gates should at all times be open, so as to enter the recesses provided for them, and thus leave the sides of the locks perfectly even. We think that the court below properly held that it was negligence on the part of the Canal Company in its failure to keep these spaces sufficiently open, so as to permit the barges or other vessels passing through to do so without coming in contact with the gates.

It is strenuously insisted by counsel for the Towing Company that the agents of the Canal Company invited the tug and barge to enter the locks just before the accident occurred. Witness Ailsworth, captain of the tug, in referring to this point, said: "He waived me to come ahead after I blew to him." Also, the witness Melson testified that "he waived me to come in." Edward Rogers, the engineer of the tug, in testifying as to this phase of the question said: "Some one hollered, 'All right, come on in.'"

[4] Those who were attending the lock testified positively that these statements were not true, so it will be seen that there is a direct conflict of testimony as to this point. These witnesses were examined in open court, and the trial judge was thus afforded an opportunity to observe their conduct and demeanor while upon the witness stand, thereby being in a position to judge as to the truth of the matter, and found that both appellants were at fault, and in doing so he must have reached the conclusion that those in charge of the tug were invited to enter the lock at that time; also in this connection it should be remembered, as we have stated, that the captain of the tug saw or could have seen that the gate had not fully entered the recess prepared for it, but that it was jutting out, so as to obstruct the passage intended for vessels entering the lock. With this projection staring him in the face, the captain of the tug did not take the precaution to stop his engines until after the barge had come in violent contact with the gate. There is also testimony as to the force of the wind at that time; the tug insisting that there was no unusual wind, and the canal people that there was at least a half gale blowing.

The court below had all this testimony, and after deliberate consideration of the facts and circumstances entered its decree. In view of what we have said, it necessarily follows that we are not inclined to disturb the decree of the court below.

Affirmed.

